UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AARON S. LUCKETTE,

                              Plaintiff,

                                                    DECISION AND ORDER

                                                    11-CV-6263L

                    v.

F.M. HOWELL & COMPANY, INC.,

                              Defendants.
_____

        Plaintiff Aaron Luckette ("Luckette") brings this action against his former employer, F.M.

Howell & Co., Inc. and Howell, Liberatore & Associates, Inc. ("HLA"), formerly known as Howell,

Liberatore & Wickham, alleging discrimination in employment on the basis of disability and the

taking of FMLA leave, pursuant to the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.

("ADA"), the New York Human Rights Law, N.Y. Exec. Law §§290 et seq. ("NYHRL"), and the

Family and Medical Leave Act, 29 U.S.C. §2601 et seq. ("FMLA").    HLA has asserted

counterclaims against Luckette for breach of contract, breach of the duty of loyalty, trespass to

chattels and tortious interference with contract.  HLA now moves for summary judgment dismissing

Luckette's claims (Dkt. #17), and Luckette cross moves for summary judgment on HLA's

counterclaims (Dkt. #38).  For the reasons that follow, HLA's motion is granted,  Luckette's motion

is denied, the complaint is dismissed, and the Court declines to exercise supplemental jurisdiction

over HLA's counterclaims.

## FACTUAL AND PROCEDURAL BACKGROUND

In or about February 2005, Luckette, the owner of a computer programming and website hosting company, Hostbrothers, Inc. ("Hostbrothers"), was hired by HLA as an employee in its marketing services business. When his employment with HLA commenced, Luckette executed two non-compete agreements, and also sold certain intellectual property rights and client accounts from Hostbrothers to HLA pursuant to a letter agreement ("intellectual property purchase agreement").

On or about December 28, 2008, HLA learned that Luckette had been injured. Luckette describes his injuries as a back fracture and states that he was diagnosed with a heart condition, following an epileptic seizure. Luckette requested immediate FMLA leave, which was granted, and continued for several months until March 2009.

While Luckette was absent on FMLA leave, HLA contacted one of its clients for whom Luckette had been the primary contact, Cornell University Hospital for Animals ("Cornell"), to inquire about an outstanding invoice. Cornell responded that it no longer owed the money, because it had made a $1,000.00 payment directly to Luckette. The existence of the payment was confirmed, and HLA's President Fred Wickham ("Wickham") was apprised of the situation.

After reviewing Luckette's non-compete agreements, which contained prohibitions against maintaining financial interests that were competitive with HLA or its successors or assignees, Wickham concluded that Luckette's acceptance of the payment from Cornell violated his non-compete obligations and the intellectual property purchase agreement, and decided to terminate Luckette's employment. As a result of Luckette's acceptance of the $1,000.00 payment from Corning – a payment which Corning evidently believed was in full satisfaction of an invoice from HLA in the amount of $2,988.89 – HLA was compelled to write off the entire amount of the invoice. Luckette, however, claims that Cornell's characterization of the payment was mistaken, and that he accepted the payment solely for the transfer of ownership of certain source code and programming

rights that he had personally developed as part of Hostbrothers prior to his employment with HLA – rights that he claimed had never been transferred to HLA.

Luckette was called in to meet with Wickham on March 23, 2009, at which time his employment was terminated. Within hours, HLA became aware that technical problems were plaguing its internet hosting services. Wickham contacted Luckette, who informed Wickham that he had contacted the domain name hosting company responsible for the identification of HLA's resources on the internet and had changed the identification of various HLA services so that they were no longer accessible online. Luckette had also tried to remotely access HLA servers, which had responded by shutting down spontaneously. Luckette contends that he was not attempting to damage HLA property, and that the service problems were the result of his good-faith attempt to separate his intellectual property from HLA's. HLA contends that Luckette's alleged post-termination interference with its equipment caused it to incur $8,068.95 in repair costs.

On May 19, 2011, over two years after his termination, Luckette filed the instant action against HLA, alleging: (1) discriminatory termination in violation of the ADA; and/or (2) retaliatory termination for taking FMLA leave. HLA filed counterclaims against Luckette for breach of contract, breach of the duty of loyalty, trespass to chattels and tortious interference with contract.

## DISCUSSION

### I. Summary Judgment in Discrimination Cases

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988); *Montana v. First Federal Savings and Loan Ass'n of*

*Rochester*, 869 F.2d 100, 103 (2d Cir. 1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

Luckette's s claims of discriminatory termination under both the ADA and FMLA  are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*,  411 U.S. 792 (1973). *See generally Thomsen v. Stantec, Inc.*, 2012 U.S. App. LEXIS 10351 at *7-*9 (2d Cir. 2012)  (retaliation claims under the FMLA are decided under the *McDonnell Douglas* burden-shifting test).  First, plaintiff must establish  a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002).  Once plaintiff has established a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).  The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center*, 509 U.S. 502, 508 (1993).

While granting Luckette the liberal interpretation and favorable inferences due to him as a nonmovant, I find that he has nonetheless failed to rebut HLA's legitimate, nondiscriminatory reason for terminating his employment.  I further find that material questions of fact preclude summary judgment on HLA's counterclaims, and decline to exercise supplemental jurisdiction over this matter.

## II.     Luckette's Discrimination and Retaliation Claims Against HLA

### A.     Discriminatory Discharge in Violation of the ADA

While conceding that he accepted the payment from Cornell, Luckette asserts that Wickham deliberately chose to misinterpret the circumstances behind the payment, and that the true motivation behind HLA's decision to terminate his employment was related to his physical disability, epilepsy.

Initially, it is undisputed that Luckette was an at-will employee who was subject to dismissal by HLA at any time, for any reason, so long as it was not a discriminatory or otherwise unlawful one. HLA denies that its decision was in any way related to Luckette's alleged epilepsy, and has submitted testimony from Wickham that he had been informed by Cornell that it had paid monies due to HLA to Luckette directly, believed upon investigation that Luckette had accepted a direct, personal payment from Cornell which compromised HLA's ability to collect on the account, and had concluded that Luckette was thereby violating his non-compete agreements and the intellectual property purchase agreement. Wickham also found that Luckette's actions in so doing were a breach of trust. Wickham avers that his decision to terminate Luckette's employment was based solely on these beliefs.

Luckette  does not dispute having accepted the payment from Cornell, although he alleges that both Cornell and Wickham misinterpreted the reason for the payment and its effect on HLA's ability to collect on its outstanding invoice. Luckette also argues that the temporal proximity between his FMLA leave due to physical disability, and his termination, provides sufficient evidence of pretext for his discriminatory discharge claim to survive summary judgment.

I disagree. Although Luckette's termination took place during an FMLA leave and the temporal proximity of those events may be found to create an inference of discrimination for the purposes of Luckette's *prima facie* case, "without more, such temporal proximity is insufficient to satisfy [Luckette's] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).

To the extent that Luckette also contends that Wickham misunderstood the terms of the noncompete agreement or failed to understand the scope of the intellectual property purchase agreement, there is no evidence that such mistakes, even if made, were motivated by discriminatory animus. In any event, "[t]o be a valid legitimate, nondiscriminatory reason for termination, an employer's belief need not be correct, only honestly held." *Shah v. Eclipsys Corp.*, 2010 U.S. Dist. LEXIS 67700 at \*34 (E.D.N.Y. 2010) (collecting cases). An employer may therefore undertake an adverse employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *DeLuca v. Allied Domecq Quick Service Restaurants*, 2006 U.S. Dist. LEXIS 39261 at \*27 (E.D.N.Y. 2006). Luckette has produced no evidence whatsoever that Wickham's interpretation of Luckette's conduct and/or his assertion of personal loss of trust in Luckette were, even if incorrect, insincere, so frivolous as to be incredible, or motivated by discriminatory animus.

Luckette also alleges that Wickham received complaints from Luckette's coworkers about interpersonal difficulties they had with Luckette in early 2009, and speculates that Wickham must have solicited the complaints because he had recently learned that Luckette was epileptic and was grasping for a reason to terminate his employment. However, there is no evidence beyond Luckette's own conjecture that Wickham was aware of Luckette's medical diagnosis, that Wickham solicited the complaints, or that his investigation of those complaints was motivated by discriminatory animus. In any event, there is no evidence that the complaints Luckette's coworkers made about their interpersonal difficulties with him played any part in his termination.

In light of Luckette's admitted conduct in accepting payment from Cornell that Cornell(perhaps mistakenly) believed was in satisfaction of its payment obligations for services provided by HLA, as well as the lack of evidence indicating any discriminatory animus on the part of Wickham or any other decision maker at HLA, Luckette cannot demonstrate that HLA's reasons

for terminating his employment were pretextual.  Accordingly, Luckette's claim of discriminatory discharge in violation of the ADA is dismissed.

### B.     Retaliatory Discharge Based Upon the Taking of FMLA Leave

Luckette also claims that his discharge occurred in retaliation for his having taken FMLA leave.  The Court is mindful that, as with discrimination statutes, the FMLA "is violated when an employer is motivated by retaliatory animus, *even if valid objective reasons for the discharge exist.*" *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (1993) (emphasis added).  *See also Donnelly v. Greenburgh Central Sch. Dist. No.7*, 691 F.3d 134, 152 n.7 (2d Cir. 2012).  However, here there is no dispute that HLA granted Luckette immediate approval for the leave, and there is no indication whatsoever, anywhere in the record, that Luckette's termination was in any way related to his absence on FMLA leave.  Because, as discussed above, there is no evidence of pretext by which a reasonable jury could infer that Luckette's termination was actually motivated by retaliatory animus, he cannot establish a claim of retaliatory discharge on that basis.  *See e.g.*, *El Sayed*, 627 F.3d 931 at 933; *Bond v. Sterling, Inc.*, 77 F. Supp. 2d 300, 305 (N.D.N.Y. 1999).

### III.     HLA's Counterclaims Against Luckette

### A.     Breach of Contract, Breach of Duty of Loyalty, Conversion

HLA argues that Luckette's actions in accepting the $1,000.00 payment from Cornell intentionally and deceptively caused Cornell to believe it was paying that amount in full satisfaction of an outstanding invoice for services provided by HLA, and has produced statements indicating that Cornell representatives had such an understanding.  Luckette, however, contends that he made no such representation to Cornell, and provides copies of e-mail correspondence suggesting that in fact, the $1,000.00 was explicitly paid solely for programming that Luckette performed, and source code that he owned, separate and apart from HLA.

I find that the statements and evidence offered by the parties present several material questions of fact, including what Cornell was told and by whom, the nature of the intellectual property and/or services that were intended to be exchanged for the $1,000.00 payment, and which party owned the intellectual property that was transferred. As such, Luckette's motion for summary judgment on HLA's first counterclaim is denied.

**B.    Trespass to Chattels, Tortious Interference With Contract**

In its second counterclaim, HLA alleges that after Luckette's employment was terminated, Luckette intentionally accessed and damaged HLA's information systems, creating disruptions in service and causing HLA to incur fees for repair the damage, as well as inducing at least three clients to discontinue using HLA's services.

As with the Cornell-Luckette transaction, the parties' characterizations of Luckette's actions conflict on almost every point, and both sides have produced testimony supporting their version of events. HLA describes Luckette's actions as deliberate, malicious and unnecessarily destructive interference with its systems, resulting in foreseeable economic damage, while Luckette describes his actions as good-faith efforts to separate his own intellectual property, which was deeply integrated into HLA's systems, with that owned by HLA, and to assist HLA with that transition in a manner that did not damage HLA's property. Given the parties' disagreement on virtually every question of fact pertinent to deciding the claims made in HLA's second counterclaim, summary judgment on that claim is denied.


**IV.    Supplemental Jurisdiction**

Because HLA's counterclaims, which are all that remain of this matter, arise solely under the laws of New York State, the Court declines to exercise supplemental jurisdiction.

The exercise of supplemental jurisdiction is governed by 28 U.S.C. §1367, which states that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ." 28 U.S.C.

§1367(a). Supplemental jurisdiction may be declined where, as here, all claims over which the Court had original jurisdiction have been dismissed. 28 U.S.C. §1367(c). The Second Circuit has observed that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). The relevant factors include judicial economy, convenience, fairness and comity. *Id*. Upon careful review, I conclude that those interests will be best served by declining to exercise supplemental jurisdiction.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #17) is granted and plaintiff's claims are dismissed in their entirety, with prejudice. Plaintiff's cross motion (Dkt. #38) for summary judgment on HLA's counterclaims is denied. Because there is no basis for the Court to exercise supplemental jurisdiction over those counterclaims, the matter is hereby remanded to New York State Supreme Court, Monroe County.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      April 29, 2013.